DAVID K. TELLEKSON (*pro hac vice* forthcoming)
dtellekson@fenwick.com
JONATHAN G. TAMIMI (CSB No. 305493)
jtamimi@fenwick.com
FENWICK & WEST LLP
401 Union St., 5th Floor
Seattle, WA 98101
Telephone:  206.389.4510
Facsimile:   206.389.4511

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
730 Arizona Ave., 1st Floor
Santa Monica, CA 90401
Telephone:  310.434.5400
Facsimile:   650.938.5200

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL PRODUCTS INC., | Case No.: 8:24-cv-02499 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| DANA INNOVATIONS, INC d/b/a SONANCE AND iPORT, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff National Products Inc. ("NPI" or "Plaintiff") brings this action against Defendant Dana Innovations, Inc. d/b/a Sonance and iPort ("iPort" or "Defendant") for an injunction, damages, and other appropriate relief to stop iPort from violating NPI's patent rights.  NPI states and alleges as follows:

## THE PARTIES

1.     NPI is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at 8410 Dallas Avenue S., Seattle, Washington 98108.

2.     NPI is a market leader in the design, manufacture, and sale of innovative docking cradles and protective cover products, including docking cradles and protective covers for tablets, cellular phones, and other portable devices, which are used, for example, in cars, trucks, bikes, planes, boats, motorcycles, and in offices, homes, retail stores, and healthcare settings.

3.     Upon information and belief, Dana Innovations, Inc. d/b/a Sonance and iPort is a corporation organized and existing under the laws of the State of California having its principal place of business at 991 Calle Amanecer, San Clemente, California 92673.

4.     Upon information and belief, iPort is in the business of providing protective covers and docking systems for portable electronic devices, including the products that are at issue in this lawsuit.  Upon information and belief, iPort advertises, markets, and sells its products, including the products that are the subject of the patent infringement alleged in this lawsuit, to the public throughout the United States, including within this judicial district.

## NATURE OF THE ACTION

5.     This is a civil action for infringement of U.S. Patent Nos. 10,778,275 ("the '275 patent"); 11,165,458 ("the '458 patent"); 12,132,511 ("the '511 patent"); 12,143,140 ("the '140 patent"); 12,143,141 ("the '141 patent"); and 12,143,142 ("the '142 patent") under the patent laws of the United States, including, without

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

limitation, 35 U.S.C. § 1 *et seq.*

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.    This Court has personal jurisdiction over iPort.  Upon information and belief, iPort maintains a regular and established place of business in this judicial district.  This Court also has personal jurisdiction over iPort because, upon information and belief, iPort has committed, aided, abetted, contributed to, and/or participated in the commission of patent infringement in this judicial district.

8.    Upon information and belief, iPort sells and offers to sell its infringing products directly through its website to the public throughout the United States, including this judicial district.

9.    Upon information and belief, iPort has its headquarters and principal place of business within this judicial district.  For example, iPort lists the following address on its main webpage: 991 Calle Amanecer, San Clemente, CA 92673. https://www.sonance.com/ and https://www.iportproducts.com/.  Upon information and belief, iPort has listed this same address as its principal place of business with the California Secretary of State.

10.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because iPort has committed acts of infringement in this District, and upon information and belief, iPort has a regular and established place of business in this District.

## THE '275 PATENT

11.    On September 15, 2020, the '275 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '275 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

12.    NPI is the owner, by assignment, of all right, title, and interest in the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

'275 patent, including the rights to exclude others and to sue and recover damages for infringement.

13.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '275 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '275 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '275 patent.

14.     A true and correct copy of the '275 patent is attached as **Exhibit A**.

### THE '458 PATENT

15.     On November 2, 2021, the '458 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali.  The '458 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

16.     NPI is the owner, by assignment, of all right, title, and interest in the '458 patent, including the rights to exclude others and to sue and recover damages for infringement.

17.     To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '458 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '458 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '458 patent.

18.     A true and correct copy of the '458 patent is attached as **Exhibit B**.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

3

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## THE '511 PATENT

19. On October 29, 2024, the '511 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '511 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

20. NPI is the owner, by assignment, of all right, title, and interest in the '511 patent, including the rights to exclude others and to sue and recover damages for infringement.

21. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '511 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '511 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '511 patent.

22. A true and correct copy of the '511 patent is attached as **Exhibit C**.

## THE '140 PATENT

23. On November 12, 2024, the '140 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '140 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

24. NPI is the owner, by assignment, of all right, title, and interest in the '140 patent, including the rights to exclude others and to sue and recover damages for infringement.

25. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '140 patent, if any, have complied with the marking requirements of 35 U.S.C.

4

§ 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '140 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '140 patent.

26. A true and correct copy of the '140 patent is attached as **Exhibit D**.

**THE '141 PATENT**

27. On November 12, 2024, the '141 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '141 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

28. NPI is the owner, by assignment, of all right, title, and interest in the '141 patent, including the rights to exclude others and to sue and recover damages for infringement.

29. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '141 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '141 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '141 patent.

30. A true and correct copy of the '141 patent is attached as **Exhibit E**.

**THE '142 PATENT**

31. On November 12, 2024, the '142 patent, entitled "Docking Sleeve With Electrical Adapter" was duly and legally issued to Jeffrey D. Carnevali. The '142 patent is generally directed toward a docking cradle for an accessory device, such as, for example, a cellular phone, phablet, tablet, handheld device, or the like.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

5

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

32. NPI is the owner, by assignment, of all right, title, and interest in the '142 patent, including the rights to exclude others and to sue and recover damages for infringement.

33. To the extent any marking or notice was required by 35 U.S.C. § 287, NPI and/or all predecessors in interest and/or implied or express licensees of the '142 patent, if any, have complied with the marking requirements of 35 U.S.C. § 287 by fixing the word "patented" together with the address of NPI's website, which is accessible to the public without charge and which associates the patented article with the '142 patent in the "Patent and Trademarks" page of NPI's website, on all goods made, offered for sale, sold, and/or imported into the United States that embody one or more claims of the '142 patent.

34. A true and correct copy of the '142 patent is attached as **Exhibit F**.

<u>COUNT I</u>
<u>INFRINGEMENT OF UNITED STATES PATENT NO. 10,778,275</u>

35. NPI realleges and incorporates by reference the allegations in paragraphs 1–34 above.

36. iPort has directly infringed and continues to directly infringe at least claims 8-10 of the '275 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to iPort's Connect Pro line of products.

37. Inspection of the Connect Pro line of products demonstrates that they meet each and every element of claims 8-10 of the '275 patent, either literally or by the doctrine of equivalents.

38. For example, iPort's Connect Pro line of products comprise the docking system of claims 8-10:



CASE                                STATION                          THE SYSTEM

39.    As shown above and below, the Connect Pro products comprise an arrangement for receiving an electronic device, the arrangement comprising a cover comprising a panel and a skirt surrounding the panel, the panel comprising an exterior surface, wherein the panel and the skirt form an interior cavity therebetween, wherein the interior cavity is configured and arranged to receive an electronic device, and wherein the cover is configured and arranged to cover a back face of the electronic device with the panel, to at least partially cover a plurality of side faces of the electronic device, and to extend around a peripheral edge of a front face of the electronic device to secure the electronic device within the cover:



**3.    Slide iPad into the Case making sure the lighting cable is snugly inserted into the iPad.**

**MODULAR DESIGN**
Ability to Upgrade Case for Future iPad Generations without Replacing Electrical Component

**INTEGRATED HAND STRAP**
Optional

**MULTIPLE CHARGING INTERFACES**
Allow for Single Charging or Multi Unit Charging in Large Scale Deployments

40.     As shown above, the Connect Pro products further comprise a male plug comprising a plurality of connectors extending into the interior cavity of the cover, wherein the male plug is positioned in the cover for mating with a female socket of the electronic device when received in the cover.

41.     Also as shown above, the Connect Pro products comprise a contactor disposed on the exterior surface of the panel and configured to be positioned over the back face of the electronic device when the electronic device is received in the interior cavity, the contactor comprising a plurality of electrical contacts.

42.     The Connect Pro products further comprise electrical connectors extending within the cover and electrically interconnecting the electrical contacts of the contactor with the connectors of the male plug.

43.     Additionally, the Connect Pro products further comprise a docking connector comprising a plurality of biasing, pogo pin docking contacts arranged in a single line and to connect with the plurality of electrical contacts of the contactor:



44.     Upon information and belief, iPort has induced and continues to

8

induce infringement of one or more claims of the '275 patent, including but not limited to claims 8-10, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '275 patent. The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '275 patent by such customers or third parties. iPort's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://www.iportproducts.com/Product/cpcase); and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--IilBc-wI--/gr3dj2isvlm2esklzvak.pdf).

45. Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '275 patent, including but not limited to claims 8-10, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles. These components supplied by iPort are key components to the docking systems claimed in the '275 patent. When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '275 patent. Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '275 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '275 patent. Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '275 patent. Moreover, iPort knows that there is no substantial non-infringing use of these components.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

46. As a direct and proximate consequence of iPort's infringement of the '275 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '275 patent.

47. iPort has had actual knowledge of the '275 patent and its infringement thereof since at least January 17, 2024, when NPI notified iPort that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '275 patent.

48. Upon information and belief, iPort's continued infringement of the '275 patent is willful.

**COUNT II**
**INFRINGEMENT OF UNITED STATES PATENT NO. 11,165,458**

49. NPI realleges and incorporates by reference the allegations in paragraphs 1–48 above.

50. iPort has directly infringed and continues to directly infringe at least claim 12 of the '458 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to iPort's Connect Phone line of products.

51. Inspection of the Connect Phone line of products demonstrates that they meet each and every element of claim 12 of the '458 patent, either literally or by the doctrine of equivalents.

52. For example, the Connect Phone products comprise a protective arrangement comprising a removable cover comprising a panel and a skirt that meets edges of the panel, the removable cover comprising an exterior surface and an adapter opening through the exterior surface, wherein the panel and the skirt form an interior cavity therebetween, and the skirt forming a mouth opening that communicates with the interior cavity, wherein the interior cavity is configured and

10

arranged to receive an electronic device:



53.    Further, the Connect Phone products comprise an adapter comprising a male plug extending in a longitudinal direction into the interior cavity of the removable cover in an arrangement for mating with a female socket of the electronic device and a contactor opposite the male plug and configured for exposure through the adapter opening in the exterior surface of the removable cover:





54.     As shown above, the contactor of the Connect Phone products comprises a lateral surface recessed relative to the removable cover and a plurality of electrical contacts arranged on the lateral surface and configured for exposure through the adapter opening of the removable cover, wherein the electrical contacts are electrically coupled to one or more of the connectors of the male plug, wherein the longitudinal direction of the male plug is perpendicular to the lateral surface of the contactor.

12

55. Upon information and belief, iPort has induced and continues to induce infringement of one or more claims of the '458 patent, including but not limited to claim 12, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '458 patent. The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '458 patent by such customers or third parties. iPort's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://www.iportproducts.com/phone) and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--Dkbx2Z9z--/zb95c64hk6iw30fxwqtq).

56. Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '458 patent, including but not limited to claim 12, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles. These components supplied by iPort are key components to the docking systems claimed in the '458 patent. When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '458 patent. Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '458 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '458 patent. Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '458 patent. Moreover, iPort knows that there is no substantial non-infringing use of these

13

components.

57.   As a direct and proximate consequence of iPort's infringement of the '458 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '458 patent.

58.   iPort has had actual knowledge of the '458 patent and its infringement thereof since at least January 17, 2024, when NPI notified iPort that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '458 patent.

59.   Upon information and belief, iPort's continued infringement of the '458 patent is willful.

**COUNT III**
**INFRINGEMENT OF UNITED STATES PATENT NO. 12,132,511**

60.   NPI realleges and incorporates by reference the allegations in paragraphs 1–59 above.

61.   iPort has directly infringed and continues to directly infringe at least claim 9 of the '511 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to iPort's Connect Phone line of products.

62.   Inspection of the Connect Phone line of products demonstrates that they meet each and every element of claim 9 of the '511 patent, either literally or by the doctrine of equivalents.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

63. The Connect Phone line of products comprise a protective arrangement comprising a removable cover comprising a panel and a skirt that meets edges of the panel, the removable cover comprising an exterior surface and an adapter opening in the exterior surface wherein the panel and the skirt form an interior cavity therebetween with the skirt forming a mouth opening that communicates with the interior cavity wherein the interior cavity is configured and arranged to receive an electronic device:



Compatible with Apple Magsafe Acessories

Integrated Lanyard Attachment Location

IPÓRT

Fits Multiple Payment Processor Models

Removable Lightning Adapter

**Transform iPhone into a protected, mobile point-of-sale for Retail and Restaurants.**

64. The adapter of the Connect Phone products further comprises a plurality of first contacts accessible within the interior cavity of the removable cover in an arrangement for mating with one or more device contacts of the electronic device and a contactor configured for exposure through the adapter opening in the exterior surface of the removable cover, the contactor comprising a lateral surface opposite the first contacts and a plurality of second contacts arranged on the lateral surface and configured for exposure through the adapter opening of the removable cover, wherein the second contacts are electrically coupled to the first contacts, and wherein the panel extends perpendicularly to the lateral surface

15

of the contactor.

65.     Upon information and belief, iPort has induced and continues to induce infringement of one or more claims of the '511 patent, including but not limited to claim 9, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '511 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '511 patent by such customers or third parties.  iPort's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://www.iportproducts.com/phone) and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--Dkbx2Z9z--/zb95c64hk6iw30fxwqtq).

66.     Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '511 patent, including but not limited to claim 9, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by iPort are key components to the docking systems claimed in the '511 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '511 patent.  Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '511 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '511 patent.  Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '511 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

16

Moreover, iPort knows that there is no substantial non-infringing use of these components.

67.     As a direct and proximate consequence of iPort's infringement of the '511 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '511 patent.

68.     iPort has had actual knowledge of the '511 patent and its infringement thereof since at least November 1, 2024, when NPI notified iPort that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '511 patent.

69.     Upon information and belief, iPort's continued infringement of the '511 patent is willful.

## COUNT IV
## INFRINGEMENT OF UNITED STATES PATENT NO. 12,143,140

70.     NPI realleges and incorporates by reference the allegations in paragraphs 1–69 above.

71.     iPort has directly infringed and continues to directly infringe at least claim 1 of the '140 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to iPort's Connect Pro (Tablet) line of products.

72.     Inspection of the Connect Pro line of products demonstrates that they meet each and every element of claim 1 of the '140 patent, either literally or by the doctrine of equivalents.

73.     The Connect Pro products comprise a protective case comprising a panel comprising an exterior surface, and a skirt surrounding the panel, wherein the panel and skirt define an interior cavity to receive the portable electronic device, wherein the panel is configured and arranged to cover a back face of the portable

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

electronic device and the skirt is configured and arranged to at least partially cover a plurality of side faces of the portable electronic device and extend over a peripheral edge of a front face of the portable electronic device to secure the portable electronic device within the interior cavity:





74.     As shown above, the Connect Pro products comprise a male plug comprising at least four first contacts, the male plug extending from the skirt into the interior cavity of the protective case and configured for mating the at least four first contacts with contacts of a female socket of the portable electronic device to facilitate transfer of power to or from the portable electronic device and to facilitate transfer of data to or from the portable electronic device.

75.     The Connect Pro products further comprise at least four second contacts disposed on the exterior surface of the panel and configured to be positioned over the back face of the portable electronic device on a portion of the exterior surface of the panel that is parallel to the back face of the portable electronic device when the portable electronic device is received in the interior cavity, wherein the at least four second contacts are electrically coupled to the at least four first contacts.

76.     Additionally, Connect Pro products comprise a female nest disposed

Fenwick & West LLP
Attorneys at Law
Mountain View

18

on the exterior surface of the panel and configured to receive a male nesting appendage, wherein the female nest defines one or more first rotational control features formed as indents or intrusions into the female nest.

77.    Upon information and belief, iPort has induced and continues to induce infringement of one or more claims of the '140 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '140 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '140 patent by such customers or third parties.  iPort's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://www.iportproducts.com/Product/cpcase); and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--IilBc-wI--/gr3dj2isvlm2esklzvak.pdf).

78.    Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '140 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by iPort are key components to the docking systems claimed in the '140 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '140 patent.  Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '140 patent and with the knowledge that these components constitute material parts of the inventions

19

claimed in the '140 patent. Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '140 patent. Moreover, iPort knows that there is no substantial non-infringing use of these components.

79. As a direct and proximate consequence of iPort's infringement of the '140 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '140 patent.

80. iPort has had actual knowledge of the '140 patent and its infringement thereof since at least November 1, 2024, when NPI notified iPort that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '140 patent.

81. Upon information and belief, iPort's continued infringement of the '140 patent is willful.

## COUNT V
## INFRINGEMENT OF UNITED STATES PATENT NO. 12,143,141

82. NPI realleges and incorporates by reference the allegations in paragraphs 1–81 above.

83. iPort has directly infringed and continues to directly infringe at least claim 1 of the '141 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for and used with portable electronic devices, including but not limited to iPort's Connect Pro line of products.

84. The Connect Pro line of products meet each and every element of claim 1 of the '141 patent, either literally or by the doctrine of equivalents.

85. The Connect Pro products comprise protective case comprising a center panel and a side skirt surrounding the center panel, the center panel comprising an exterior surface, wherein the center panel and the side skirt form an

20

interior cavity therebetween, wherein the interior cavity is configured and arranged to receive the portable electronic device, wherein the protective case is configured and arranged to cover a back face of the portable electronic device with the center panel, cover at least a portion of each side face of the portable electronic device with the side skirt, and to extend around a peripheral edge of a front face of the portable electronic device to secure the portable electronic device within the protective case and wherein the exterior surface opposites to the interior cavity:



86.   As shown above, the Connect Pro products comprise a male plug extending into the interior cavity of the protective case and comprising a plurality of first contacts, wherein the male plug is positioned in the protective case for mating with a female socket of the portable electronic device when received in the protective case.

87.   Additionally, the Connect Pro products comprise a male plug extending into the interior cavity of the protective case and comprising a plurality of first contacts, wherein the male plug is positioned in the protective case for mating with a female socket of the portable electronic device when received in the protective case.

88.   The Connect Pro products further comprise a plurality of second

21

contacts arrayed on a portion of the exterior surface of the center panel that is parallel to the back face of the portable electronic device, and positioned over the back face of the portable electronic device, when the portable electronic device is received in the interior cavity, wherein the plurality of second contacts comprises at least three circular contacts, at least three annular contacts, or at least three contacts spaced laterally along the exterior surface of the center panel, wherein at least one of the second contacts is electrically coupled to at least one of the first contacts.

89.    And the Connect Pro products further comprise wherein the second contacts that are disposed on a surface that is recessed relative to an adjacent portion of the exterior surface of the center panel.

90.    Upon information and belief, iPort has induced and continues to induce infringement of one or more claims of the '141 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '141 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '141 patent by such customers or third parties.  iPort's acts of inducement include:  providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites (for example, https://www.iportproducts.com/Product/cpcase); and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--IilBc-wI--/gr3dj2isvlm2esklzvak.pdf).

91.    Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '141 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and

docking cradles.  These components supplied by iPort are key components to the docking systems claimed in the '141 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '141 patent.  Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '141 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '141 patent.  Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '141 patent.  Moreover, iPort knows that there is no substantial non-infringing use of these components.

92.    As a direct and proximate consequence of iPort's infringement of the '141 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '141 patent.

93.    iPort has had actual knowledge of the '141 patent and its infringement thereof since at least November 1, 2024, when NPI notified iPort that the manufacture, sale, offering for sale, importation, and/or use of these products infringes the '141 patent.

94.    Upon information and belief, iPort's continued infringement of the '141 patent is willful.

## COUNT VI
## INFRINGEMENT OF UNITED STATES PATENT NO. 12,143,142

95.    NPI realleges and incorporates by reference the allegations in paragraphs 1–94 above.

96.    iPort has directly infringed and continues to directly infringe at least claim 1 of the '142 patent by making, using, offering to sell, and selling within the United States and/or importing into the United States powered docking systems for

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

23

and used with portable electronic devices, including but not limited to iPort's Connect Phone line of products with multi-device docking stations.

97.    Inspection of the Connect Phone products demonstrates that they meet each and every element of claim 1 of the '142 patent, either literally or by the doctrine of equivalents.

98.    iPort's Connect Phone multi-device docking station product comprises the docking system of claim 1:



99.    As shown above, the Connect Phone products comprise at least one protective case for a portable electronic device, each of the at least one protective case comprising a panel, a skirt surrounding the panel, and wherein the panel and skirt define an interior cavity to receive the portable electronic device, wherein the panel is configured and arranged to cover a back face of the portable electronic device and the skirt is configured and arranged to at least partially cover a plurality of side faces of the portable electronic device and extend over a peripheral edge of a front face of the portable electronic device to secure the portable electronic device

within the interior cavity.

100.  The Connect Phone products further comprise a male plug comprising at least three first contacts, the male plug extending from the skirt into the interior cavity of the protective case and configured for mating the at least three first contacts with contacts of a female socket of the portable electronic device to facilitate transfer of power to or from the portable electronic device and a contactor comprising a contactor surface and at least three second contacts disposed on the contactor surface, wherein the at least three second contacts are electrically coupled to the at least three first contacts.

101.  Additionally, the Connect Phone products include a multi-device docking station comprising a base and a plurality of docking connectors disposed on or in the base, each docking connector configured to mate with the contactor surface of a one of the at least one protective case, each docking connector comprising at least three docking contacts arranged to electrically connect with the at least three second contacts of the one of the at least one protective case, wherein the at least three docking contacts are spring-loaded pogo pins.

102.  Further, the multi-device docking station of the Connect Phone products comprises a plurality of support surfaces extending away from the base, wherein each of the support surfaces is configured for positioning the portable electronic device against the support surface when the contactor surface of the one of the at least one protective case is mated to a one of the docking connectors proximate the support surface.

103.  Upon information and belief, iPort has induced and continues to induce infringement of one or more claims of the '142 patent, including but not limited to claim 1, by inducing its customers and other third parties to use without authorization the docking systems claimed in the '142 patent.  The use, without authorization, of the docking system constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the '142 patent by such customers

or third parties.  iPort's acts of inducement include: providing its customers with the claimed docking systems and components thereof and intending customers to use according to their intended use; advertising these products and their intended use through its own and third-party websites and providing instructions on how to use these products (for example, https://images.salsify.com/image/upload/s--Dkbx2Z9z--/zb95c64hk6iw30fxwqtq).

104.   Upon information and belief, iPort has contributed to and continues to contribute to the infringement of one or more claims of the '142 patent, including but not limited to claim 1, by, without authority, selling and/or offering to sell within the United States, importing, and/or supplying components of systems that comprise the patented invention, including but not limited to protective covers and docking cradles.  These components supplied by iPort are key components to the docking systems claimed in the '142 patent.  When, for example, a protective cover is used with a docking cradle, the claimed docking systems are formed, thereby infringing, either literally or under the doctrine of equivalents, one or more claims of the '142 patent.  Upon information and belief, iPort supplied and continues to supply these components, with the knowledge of the '142 patent and with the knowledge that these components constitute material parts of the inventions claimed in the '142 patent.  Further, iPort knows that these components are especially made and/or especially adapted for use as claimed in the '142 patent.  Moreover, iPort knows that there is no substantial non-infringing use of these components.

105.   As a direct and proximate consequence of iPort's infringement of the '142 patent, NPI has suffered irreparable harm, and NPI will continue to suffer irreparable harm in the future unless iPort is enjoined from infringing the '142 patent.

106.   iPort has had actual knowledge of the '142 patent and its infringement thereof since at least November 1, 2024, when NPI notified iPort that the

manufacture, sale, offering for sale, importation, and/or use of these products infringes the '142 patent.

107.   Upon information and belief, iPort's continued infringement of the '142 patent is willful.

## **PRAYER FOR RELIEF**

WHEREFORE, NPI prays for the following relief:

a.   A judgment that Dana Innovations, Inc. d/b/a Sonance and iPort has infringed the '275, '458 '511, '140, '141, and '142 patents;

b.   An order preliminarily and permanently enjoining and restraining Dana Innovations, Inc. d/b/a Sonance and iPort, its officers, directors, agents, servants, employees, licensees, attorneys, and all other persons acting under or through them, directly or indirectly, from infringing the '275, '458, '511, '140, '141, and '142 patents;

c.   A judgment and order requiring that Dana Innovations, Inc. d/b/a Sonance and iPort pay damages under 35 U.S.C. § 284, with prejudgment and post-judgment interest;

d.   A judgment that Dana Innovations, Inc. d/b/a Sonance and iPort's infringement has been willful, and that damages are increased three-fold;

e.   A judgment and order directing Dana Innovations, Inc. d/b/a Sonance and iPort to pay the costs of this action, including all disbursements and attorney fees as provided by 35 U.S.C. § 285, with prejudgment interest; and

f.   Such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

NPI hereby demands a trial by jury of all issues so triable.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

27

Dated:  November 15, 2024

Respectfully submitted,

FENWICK & WEST LLP

By:/s/*Jonathan G. Tamimi*
Jonathan G. Tamimi (CSB No. 305493)

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

28